**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

AHMAD B. NURRIDDIN,

        *Plaintiff,*

    v.

ALEXANDER ACOSTA *et al.*,

        *Defendants.*

Civil Action No. 16-1036 (TJK)

## MEMORANDUM OPINION

Plaintiff Ahmad B. Nurriddin, proceeding *pro se,* is a former employee of the National Aeronautics and Space Administration ("NASA"). He previously filed two separate lawsuits against NASA for unlawful employment discrimination, neither of which was ultimately successful. While pursuing his discrimination claims, Nurriddin also sought workers' compensation from the federal government under the Federal Employees' Compensation Act ("FECA"), 5 U.S.C. § 8101, *et seq.* He filed the instant action against the Secretary of Labor and the Director of the Office of Personnel Management ("OPM"), in their official capacities, bringing various claims concerning his FECA benefits. Defendants have moved to dismiss the amended complaint for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim. ECF No. 13. Nurriddin has moved for preliminary injunctive relief, ECF No. 27, and to file under seal an exhibit in support of the preliminary-injunction motion, ECF No. 35. For the reasons stated below, the Court will grant Defendants' motion, dismiss the amended complaint for lack of subject matter jurisdiction, and deny Nurriddin's motions as moot.

# I.     Background

## A.     FECA

Under FECA, the United States must "pay compensation . . . for the disability or death of an employee resulting from personal injury sustained while in the performance of his duty . . . ." 5 U.S.C. § 8102(a).  The Secretary of Labor is authorized to administer FECA, to prescribe necessary rules and regulations thereunder, and to delegate his powers under FECA to Department of Labor ("DOL") employees.  *Id.* §§ 8145, 8149.  The Secretary has delegated the administration of FECA to DOL's Office of Workers' Compensation Programs ("OWCP").  20 C.F.R. § 10.1.  When a claim for compensation is submitted, OWCP determines whether the claimant is entitled to such compensation.  *See id.* § 10.125.  The claimant must, among other things, submit evidence establishing that the claimed medical condition is "causally related" to an alleged workplace injury.  *Id.* § 10.115(e).

After deciding to grant or deny an award for payment of compensation, OWCP's Director may decide to "review" its compensation decision *sua sponte* at any time, regardless of "whether there is new evidence or information."  *Id.* § 10.610.  Upon review, the Director may "modify, rescind, decrease or increase compensation previously awarded, or award compensation previously denied."  *Id.*  For example, the Director may terminate compensation where "[a] partially disabled employee . . . refuses to or neglects to work after suitable work is offered to or arranged for him or her."  *Williams v. Tapella*, 658 F. Supp. 2d 204, 213 n.4 (D.D.C. 2009) (quoting 20 C.F.R. § 10.517(a)); *accord* 5 U.S.C. § 8106(c).  OWCP may also suspend or terminate compensation where a claimant "refuses to submit to," or "obstructs" a medical examination.  5 U.S.C. § 8123(d); *see also id.* § 8123(a) (requiring claimants to submit to a medical examination "after the injury and as frequently and at the times and places as may be reasonably required").

If a claimant disagrees with a formal decision by OWCP, such as a denial of a claim for compensation or a termination of existing benefits, he has three ways to challenge that decision: "reconsideration by the district office [of OWCP]; a hearing before an OWCP hearing representative; and [an] appeal" to the Employees' Compensation Appeals Board ("ECAB"). 20 C.F.R. § 10.600. "A claimant may also challenge an ECAB decision by petitioning for reconsideration." *Hall v. DOL*, 289 F. Supp. 3d 93, 99 (D.D.C. 2018) (citing 20 C.F.R. §§ 501.6, 501.7).

Significantly for purposes of this case, "[j]udicial review of determinations under FECA [is generally] precluded under 5 U.S.C. § 8128(b)." *Id.*; *see also Lockheed Aircraft Corp. v. United States*, 460 U.S. 190, 194 (1983) ("[Through FECA,] employees are guaranteed the right to receive immediate, fixed benefits, regardless of fault and without need for litigation, but in return they lose the right to sue the Government.").

In addition to providing for workers' compensation, FECA provides certain "[c]ivil service retention rights" to federal employees who have recovered from a compensable injury. 5 U.S.C. § 8151. Depending on when the employee recovers from his injury, the federal employer is required either to restore the employee to "his former or an equivalent position," *id.* § 8151(b)(1), or to "make all reasonable efforts" to do so, *id.* § 8151(b)(2). These rights are governed by regulations issued by OPM. *Id.* § 8151(b). Under these regulations, to challenge alleged violations of these rights, an employee must file an appeal with the Merit Systems Protection Board ("MSPB"). *See* 5 C.F.R. § 353.304. The Federal Circuit "has sole statutory authority to review most MSPB final decisions." *Grant v. Dep't of Treasury*, 272 F. Supp. 3d 182, 184 (D.D.C. 2017) (citing 5 U.S.C. § 7703(b)(1)).

### B.     Factual Background

In 1999, Nurriddin sued NASA, alleging that from 1991 to 1996 his employer had

discriminated against him based on race, sex, and religion, created a hostile work environment,

and retaliated against him.  *See Nurriddin v. Goldin*, 382 F. Supp. 2d 79 (D.D.C. 2005), *aff'd sub*

*nom Nurriddin v. Griffin*, 222 F. App'x 5 (D.C. Cir. 2007).  The district court granted summary

judgment for NASA on all claims.  *Id.* at 109.  In 2004, Nurriddin filed a second lawsuit against

NASA, advancing similar allegations for the period from 1996 and 2004.  *See Nurriddin v.*

*Bolden*, 40 F. Supp. 3d 104 (D.D.C. 2014), *aff'd*, 818 F.3d 751 (D.C. Cir. 2016).  The district

court dismissed some of his claims on a Rule 12(b)(6) motion and granted summary judgment

for NASA on his remaining claims.  *Id.* at 110.

While pursuing his employment discrimination lawsuits, Nurriddin also sought workers'

compensation from the federal government under FECA.  There is some factual overlap between

the two lawsuits, because some of Nurriddin's discrimination allegations are also relevant to his

workers' compensation claims.  *See generally Nurriddin*, 40 F. Supp. 3d at 111-14 (summarizing

facts underlying Nurriddin's discrimination claims).

In 1999, Nurriddin filed a claim with OWCP seeking compensation and other benefits for

depression allegedly caused by "work-related stress."  ECF No. 12 ("Am. Compl.") ¶ 3.  In

March 2000, OWCP denied the claim.  ECF No. 20-1 ("Nurriddin Decl.") ¶ 4.[1]  In June 2000,

---

[1] Both parties previously moved to file voluminous exhibits under seal on the theory that they
contain "medical information . . . in which [Nurriddin] has a privacy interest."  ECF No. 16 at 1;
*see* ECF No. 21.  The previous judge assigned to this case granted those motions.  *See* Minute
Orders of February 23, 2017, and March 23, 2017.  In this Opinion, the Court will reference the
contents of those exhibits at a high level of generality, without disclosing the specific details of
Nurriddin's medical information.  *Cf. Nurriddin v. Bolden*, 674 F. Supp. 2d 64, 70 n.2 (D.D.C.
2009) (noting that the details of Nurriddin's sealed medical diagnosis would not be discussed in
the opinion, but that it would nonetheless include "generic characterizations" of his condition,
consistent with the public record).

after Nurriddin requested a hearing, an OWCP hearing representative set aside the denial. *Id.* ¶ 7. Six months later, in December 2000, OWCP approved the depression claim. *Id.* ¶ 10. Around that time, Nurriddin stopped going to work. ECF No. 19 ("Tritz Decl."), Attach. J at 2. [2] In March 2001, he began to receive periodic disability payments and benefits. Tritz Decl. ¶ 6.

In March 2001, Nurriddin's treating physician concluded that he could resume work, albeit with certain restrictions. Am. Compl. ¶ 6. One such restriction was that he could not be returned to the same work environment. *See id.* ¶ 8; ECF No. 21-1, Attach. 12. In October 2001, NASA offered to transfer Nurriddin to another position, but he turned it down. Am. Compl. ¶¶ 7, 15. Concluding that Nurriddin had rejected an offer for suitable work, OWCP decided to terminate his benefits in December 2001. *Id.* ¶ 16. But before the termination went into effect, in February 2002, OWCP vacated the decision on *sua sponte* review by the Director. *Id.* ¶ 23; Tritz Decl. ¶ 8. The Director determined that the job Nurriddin had been offered was in fact not suitable for him. Am. Compl. ¶¶ 20-22.

At some point, Nurriddin also filed a separate claim with OWCP, alleging that work-related stress had caused injuries to his neck and back. Tritz Decl. ¶ 7; *id.*, Attach. I at 1. OWCP initially denied this claim in September 2003. Nurriddin Decl. ¶ 29. But, after a hearing held at Nurriddin's request, an OWCP hearing representative set aside the denial. *Id.* ¶¶ 29, 33. In January 2005, OWCP again denied the claim, and Nurriddin subsequently filed an appeal with ECAB. *Id.* ¶¶ 35-36; Am. Compl. ¶ 28. At OWCP's request, ECAB remanded the case back to OWCP to further develop the factual record. Am. Compl. ¶¶ 29-30; Nurriddin Decl. ¶ 36.

---

[2] Although he had stopped working, Nurriddin remained employed by NASA up until he was fired in January 2004 on the ground that his medical condition kept him from performing his duties. *See* Nurriddin Decl. ¶ 31.

In August 2007, OWCP denied Nurriddin's neck-and-back claim for a third time, finding that the alleged medical condition was not caused by work-related stress. Tritz Decl., Attach. I at 3. Moreover, in the same decision, OWCP terminated Nurriddin's existing benefits because it found that, at least with respect to his depression, he was now capable of working without restriction. *Id.*; Nurriddin Decl. ¶ 41. Nurriddin appealed this decision to ECAB. Nurriddin Decl. ¶ 42. In April 2008, ECAB affirmed the denial of Nurriddin's neck-and-back claim, but overturned the termination of benefits, on the grounds that Nurriddin was not given proper notice and that OWCP had not adequately proven that he no longer suffered any residual effects of his depression. *See* Tritz Decl. ¶ 13; *id.*, Attach. J at 7-10. On remand, OWCP restored his benefits, and compensated him for the nine months he was without benefits. *Id.* ¶ 14. OWCP also notified Nurriddin that it would schedule a medical examination to obtain a second opinion regarding his depression. *Id.* ¶ 17; *id.*, Attach. M.

OWCP scheduled a medical examination for Nurriddin on March 25, 2013, but he failed to attend. *Id.* ¶ 18; *see id.*, Attach. N. On April 12, 2013, OWCP notified Nurriddin that his benefits would be suspended, unless he had a valid reason for his absence. *Id.*, Attach. N. Nurriddin replied that he had been busy serving as a "medical proxy for [an] elderly relative living in New York City." Nurriddin Decl. ¶ 60. Although OWCP did not accept this as a valid reason, rather than suspend his benefits, it scheduled another examination for him on June 13, 2013. Tritz Decl. ¶ 18; ECF No. 21-1, Attachs. 22-23. Nurriddin again failed to attend. Tritz Decl. ¶ 18. As a result, in a letter dated June 24, 2013, OWCP found that Nurriddin "failed to attend, or obstructed an examination directed by [OWCP]," and suspended his benefits, effective June 30, 2013. Tritz Decl., Attach. N (citing 5 U.S.C. § 8123(d)). The letter included a description of Nurriddin's appeal rights and a form that he could complete and send to either

OWCP or ECAB if he sought to challenge the suspension.  *Id.*  Nurriddin alleges that he made

requests for reconsideration, a hearing, and an appeal to ECAB, but his requests were improperly

denied.  *See* Am. Compl. ¶¶ 39-42.  Ultimately, his benefits were restored after he attended an

examination with Dr. Anthony Bardinelli on October 9, 2013.  Tritz Decl. ¶ 19.

As of July 23, 2016, OWCP had paid Nurriddin $822,721.07 in compensation and

$22,681.03 for medical costs related to his depression, all under FECA.  *Id.* ¶ 6.

### C.    Procedural Background

On June 2, 2016, Nurriddin brought the instant action.  ECF No. 1.[3]  A year later, and

with the Court's leave, he filed an amended complaint.  Am. Compl.  The amended complaint

asserts various claims against DOL and OPM pursuant to FECA, the Fifth Amendment to the

U.S. Constitution, and the Administrative Procedure Act ("APA"), 5 U.S.C. § 551 *et seq.*  Am.

Compl. at 1.  The complaint alleges that Nurriddin's workers' compensation benefits were

improperly suspended on multiple occasions, *id.* ¶¶ 19, 27, and that he was not properly restored

to work, *id.* ¶¶ 25-26.  The complaint also identifies various requests from Nurriddin to DOL or

OPM that he alleges went ignored or unfulfilled, including one request for a complete copy of

his claim record, *id.* ¶¶ 51-53, and another for a log of the health insurance and life insurance

deductions taken from his monthly compensation, *id.* ¶¶ 47-48.

By way of relief, Nurriddin requests that the Court compel Defendants to: (1) provide

"complete, accurate, and thorough" responses to all of Nurriddin's previous requests; (2) provide

an "accounting" of his FECA compensation, including a log of all health insurance and life

---

[3] In his initial petition, Nurriddin named Thomas Perez and Beth Colbert, the respective heads of
DOL and OPM at the time, as Defendants.  ECF No. 1.  Pursuant to Federal Rule of Civil
Procedure 25(d), the Court replaces them with the current Secretary of Labor, Alexander Acosta,
and the current OPM Director, Jeff Tien Han Pon.

insurance deductions; (3) explain Defendants' failure to ensure that he received "credible" work restoration offers; (4) provide "an Advisory Memorandum regarding the impact of the decision in *Nurriddin v. Bolden* upon the efforts of agencies to credibly restore injured employees"; (5) provide a "cost estimate of the benefits" that Nurriddin lost "due to the improper termination after a credible work restoration opportunity was not presented"; and (6) provide Nurriddin "a complete copy of his claim file." *Id.* at 8 (Conclusion).

On February 10, 2017, Defendants moved to dismiss Nurriddin's amended complaint for lack of subject matter jurisdiction, or in the alternative, for failure to state a claim. ECF No. 13 at 1. Nurriddin then filed a motion for preliminary injunctive relief, ECF No. 27, and a motion to file a supporting exhibit under seal, ECF No. 35.

## II.    Legal Standard

"Federal courts are courts of limited jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). The law presumes that "a cause lies outside [the Court's] limited jurisdiction" unless the party asserting jurisdiction establishes otherwise. *Id.* "[A] federal court generally may not rule on the merits of a case without first determining that it has jurisdiction over the category of claim in suit (subject-matter jurisdiction) . . . ." *Kaplan v. Cent. Bank of the Islamic Republic of Iran*, 896 F.3d 501, 510 (D.C. Cir. 2018) (quoting *Sinochem Int'l Co. v. Malay. Int'l Shipping Corp.*, 549 U.S. 422, 430-31 (2007)). "Before proceeding to the merits of a claim, a court must satisfy itself that it has subject-matter jurisdiction to consider the claim." *Troupe v. Att'y Gen. of U.S.*, No. 17-cv-875, 2018 WL 3381310, at *1 (D.D.C. July 11, 2018). To determine its subject matter jurisdiction, "where necessary, the court may consider the complaint supplemented by undisputed facts evidenced in the record, or the complaint supplemented by undisputed facts plus the court's resolution of disputed facts." *Coal. for*

*Underground Expansion v. Mineta*, 333 F.3d 193, 198 (D.C. Cir. 2003) (quoting *Herbert v. Nat'l Acad. of Scis.*, 974 F.2d 192, 197 (D.C. Cir. 1992)).

On a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1), "plaintiffs bear the burden of establishing jurisdiction." *Knapp Med. Ctr. v. Hargan*, 875 F.3d 1125, 1128 (D.C. Cir. 2017). Courts are generally required, "prior to any discovery, to accord [plaintiffs] the benefit of all reasonable inferences" from the "allegations in the complaint and evidentiary material in the record," *Feldman v. FDIC*, 879 F.3d 347, 351 (D.C. Cir. 2018), but should not assume the truth of conclusory statements, *see Gulf Coast Mar. Supply, Inc. v. United States*, 867 F.3d 123, 131 n.2 (D.C. Cir. 2017), or draw inferences that are implausible based on the particular facts alleged, *see Schubarth v. Fed. Republic of Germany*, 891 F.3d 392, 398 (D.C. Cir. 2018). Moreover, "although the Court is required to construe [a] *pro se* complaint liberally, *pro se* plaintiffs are not freed from the requirement to plead an adequate jurisdictional basis for their claims." *Coleman v. Toyota Motor Credit Corp.*, 109 F. Supp. 3d 4, 6 (D.D.C. 2015) (citations, alteration, and internal quotation marks omitted) (quoting *Gomez v. Aragon*, 705 F. Supp. 2d 21, 23 (D.D.C. 2010)).

## III. Analysis

Nurriddin pleads claims against DOL and OPM pursuant to FECA, the Fifth Amendment to the U.S. Constitution, and the APA, and so he asserts federal question jurisdiction pursuant to 28 U.S.C. § 1331. *See* Am. Compl. at 1.[4] However, as explained below, because the Court lacks jurisdiction to hear Nurriddin's claims, it must dismiss his amended complaint.

---

[4] Nurriddin also alleges that subject matter jurisdiction is proper under 28 U.S.C. § 1338. Am. Compl. ¶ 1. However, that provision governs subject matter jurisdiction in patent cases and is not applicable here.

## A.      Claims against DOL

In the amended complaint, Nurriddin identifies his various grievances against OWCP, a component of DOL.  First, he claims that, on at least five occasions, OWCP "improperly interrupted/suspended" his benefits.  Am. Compl. ¶¶ 19, 27.  Second, he asserts that OWCP has "made numerous deductions from [his] benefits without proper documentation being provided." *Id.* ¶ 66.  Third, he alleges that OWCP engaged in "doctor shopping" when considering whether to terminate his benefits.  *Id.* ¶ 54.  Fourth, Nurriddin states that OWCP has failed to grant a number of his requests concerning his benefits, including one for a complete copy of his claim record and another for a refund due to OWCP's delay in changing his health care insurance provider.  *Id.* ¶¶ 43-44, 47, 51.  Fifth, he claims that OWCP falsely represented that the "earliest Statement of Accepted Facts (SOAFs) in [his] file was dated January 3, 2007."  *Id.* ¶ 67.

As discussed in further detail below, however, FECA bars judicial review of these claims.

### 1.      FECA Claims

Judicial review of DOL's compensation decisions is generally barred under FECA, which provides that that "[t]he action of the Secretary [of Labor] or his designee in allowing or denying a payment under this chapter is . . . (1) final and conclusive for all purposes and with respect to all questions of law and fact; and (2) not subject to review by another official of the United States or by a court by mandamus or otherwise."  5 U.S.C. § 8128(b).  The Secretary has delegated this authority to OWCP.  *See* 20 C.F.R. § 10.1.  "The Supreme Court has recognized § 8128(b) as an example of 'Congress intend[ing] to bar judicial review altogether,' given the provision's 'unambiguous and comprehensive' language."  *Hall*, 289 F. Supp. 3d at 99 (quoting *Lindahl v. OPM*, 470 U.S. 768, 779-80 & n.13 (1985)).

Nurriddin brings challenges to various compensation decisions made by OWCP that fall squarely within the jurisdictional bar of § 8128(b).  For example, he claims that his benefits were

improperly suspended on multiple occasions, Am. Compl. ¶ 27, and takes issue with the health insurance deductions from his compensation, *id.* ¶ 66. But by operation of the bar, the Court lacks jurisdiction to consider such challenges. *See, e.g., Gibbs v. United States*, 517 F. App'x 664, 667-68 (11th Cir. 2013) (finding plaintiff's claim that OWCP improperly suspended his benefits by holding a telephonic hearing, as opposed to an in-person one, was barred under FECA); *Ramirez v. Walker*, 199 F. App'x 302, 307 (5th Cir. 2006) (holding that plaintiff "is prohibited from challenging the merits of the Department of Labor's decision to suspend his compensation benefits, as such review on the merits of any aspect of his claim is precluded under 5 U.S.C. § 8128(b)"); *Rae v. United States*, No. 87-cv-3042, 1988 WL 83137, at *1 (D.D.C. Aug. 1, 1988) (holding that plaintiff's claims that his benefits were "erroneously calculated" and that his "deductions for health insurance" were "unfair because he did not receive any benefits of the insurance," were barred under FECA).

## 2. Constitutional Claims

Nurriddin appears to recognize that § 8128(b) bars judicial review of DOL's compensation decisions. *See* Am. Compl. at 1 (citing 5 U.S.C. § 8128); ECF No. 20 ("Pl.'s Opp.") at 3 ("[C]ourts have unanimously held that section 8128(b) prohibits judicial review of FECA benefit determinations."). But he argues that an exception applies in this case, because DOL allegedly violated his due process and equal protection rights under the Fifth Amendment. *See* Pl.'s Opp. at 3 ("Clearly, plaintiff's August 26, 2013 letter could be read as seeking a constitutional right; thereby placing this matter squarely within the jurisdiction of this court."); *id.* at 3-9 (bulk of opposition brief dedicated to due process and equal protection claims). Indeed, it is well established that "[t]he general finality of administrative adjudications set out in § 8128(b) 'does not bar judicial review of constitutional claims.'" *Hall*, 289 F. Supp. 3d at 99 (quoting *Lepre v. DOL*, 275 F.3d 59, 67-68 (D.C. Cir. 2001) (collecting cases)); *see also*

*Gallucci v. Chao*, 374 F. Supp. 2d 121, 125 (D.D.C. 2005) ("[T]his court has subject matter jurisdiction to review a decision made under FECA if there has been a constitutional violation."), *aff'd*, No. 05-5280, 2006 WL 3018055 (D.C. Cir. Mar. 2, 2006).

The question of whether all constitutional claims are covered by this exception to § 8128(b)'s jurisdictional bar is not entirely settled, as reflected by the D.C. Circuit's discussion of the Seventh Circuit's analysis in *Czerkies v. DOL*, 73 F.3d 1435 (7th Cir. 1996) (en banc). *See Lepre v. DOL*, 275 F.3d 59, 67 (D.C. Cir. 2001). The en banc majority in *Czerkies* found that the exception authorized judicial review of all constitutional claims. *Id.* (citing *Czerkies*, 73 F.3d at 1442). In contrast, the concurring judges would have permitted review of only *some* constitutional claims—"systemic challenges," as opposed to "case-specific decisions." *Id.* (citing *Czerkies*, 73 F.3d at 1443 (Easterbrook, J., concurring in the judgment)). The *Lepre* court did not need to choose between the two approaches because the due process claim in that case met the more exacting "systemic challenge" standard. *Id.*

Under either approach, however, a plaintiff must bring a colorable or substantial constitutional claim—otherwise, § 8128(b) bars judicial review. *See Hamilton v. Acosta*, 688 F. App'x 16, 17 (D.C. Cir. 2017) (per curiam) ("Even if construed liberally, appellant's *pro se* complaint does not assert a colorable due process claim that could bring him within the implicit exception recognized in [*Lepre*]."); *Charles v. DOL*, No. 03-1237, 2003 WL 23018941, at *1 (D.C. Cir. Dec. 23, 2003) ("The petitioner has not presented a substantial constitutional claim that could bring her within the implicit exception to § 8128(b)(2) recognized in [*Lepre*]."); *Schwartz v. DOL*, 161 F. App'x 357, 358 (5th Cir. 2005) ("A limited exception to FECA preclusion has been recognized for substantial cognizable constitutional challenges to the proceedings."). "Merely affixing a constitutional label to an otherwise precluded claim . . . will

not suffice." *Ramirez*, 199 F. App'x at 307. Here, even under the en banc majority's approach in *Czerkies,* the exception to § 8128(b)'s jurisdictional bar would not permit review of Nurriddin's constitutional claims, because, as explained below, they are not colorable.[5]

### a. Procedural Due Process Claims

Although it is not clear from his amended complaint, Nurriddin asserts in his opposition that he has brought a procedural due process claim. Pl.'s Opp. at 3-5. In order to state such a claim, the plaintiff must show "(1) a deprivation; (2) of life, liberty, or property; (3) without due process of law." *Lightfoot v. District of Columbia*, 273 F.R.D. 314, 319 (D.D.C. 2011) (citing *Propert v. District of Columbia*, 948 F.2d 1327, 1331 (D.C. Cir. 1991)).

"[D]isability benefits under FECA constitute a valid property interest." *Stuto v. Fleishman*, 164 F.3d 820, 825 (2d Cir. 1999). Thus, the suspension or termination of FECA benefits can constitute a deprivation of a property interest. *See Prestop v. Hamlett*, No. 99-cv-2747, 2001 WL 363676, at *7 (S.D.N.Y. Apr. 12, 2001) (reduction of FECA benefits deprived plaintiff of a property interest). Nurriddin's allegation that OWCP "improperly interrupted/suspended" his benefits, Am. Compl. ¶¶ 19, 27, is therefore a colorable allegation of

---

[5] Nurriddin's highly individualized claims quite obviously do not satisfy the approach reflected in the *Czerkies* concurrence, which would only permit "systemic" constitutional challenges.

such a deprivation.[6]  But Nurriddin's other claims against OWCP do not reflect a colorable claim that he was deprived of a property interest.[7]

The next question is whether the alleged suspensions of Nurriddin's benefits were "without due process of law." *Lightfoot*, 273 F.R.D. at 319.  "The fundamental requirements of due process are 'notice and [an] opportunity to respond.'" *Gallucci*, 374 F. Supp. 2d at 126 (quoting *Cleveland Bd. Of Educ. v. Loudermill*, 470 U.S. 532, 546 (1985)).  Even where a person is "unlawfully deprived of property," due process is often satisfied where "a meaningful post-deprivation remedy is provided." *Id.* (citing *Hudson v. Palmer*, 468 U.S. 517, 530-36 (1984)).  And in this context, courts have repeatedly held that, "even in situations where there were violations of OWCP procedures," the "post-deprivation remedies available to FECA claimants are sufficient to assure that claimants receive sufficient due process." *Schwartz*, 161 F. App'x at 359; *see also Lepre,* 275 F.3d at 71 (OWCP's reconsideration and appeal were sufficient where notice of termination was allegedly lost in the mail); *Gallucci*, 374 F. Supp. 2d at 126 (notice of appeal rights upon reduction of benefits was sufficient).

---

[6] Nurriddin also argues that Defendants "have violated [his] liberty interests in his federal service career; interfered with his opportunity to obtain subsequent employment; disrupted his ability to obtain the customary benefits associated with a successful federal career." Am. Compl. at 1. However, these interests are relevant only to Nurriddin's claim against OPM for failure to restore him to suitable work (discussed separately), not his claims against DOL.

[7] At first glance, Nurriddin's claim that OWCP "made numerous deductions from [his] benefits without proper documentation being provided" may appear to be such a deprivation, but it is not. *See* Am. Compl. ¶ 66.  This claim stems from his belief that his health insurance provider for 2012 should have been changed "from Mail Handlers to Blue Cross Blue Shield." *Id.* ¶ 49; Tritz Decl., Attach. Q.  Because this change did not occur until 2013, he claims to be entitled to "a refund payment for the 2012 calendar year because he was not enrolled in Blue Cross Blue Shield." Am. Compl. ¶ 47.  To begin with, it appears that the delay was due to Nurriddin's failure to timely file the appropriate paperwork.  *See* ECF No. 21-1, Attach. 19; Tritz Decl., Attach. S.  But in any event, this claim could not constitute a *deprivation* of a property interest, because Nurriddin has not alleged (nor is it evident from the record) that he was ever without the health insurance benefits to which he was entitled under FECA.

Here, Nurriddin claims that OWCP "improperly interrupted/suspended" his benefits on at least five occasions. Am. Compl. ¶¶ 19, 27. Indeed, the record suggests that OWCP has suspended or terminated his benefits a number of times. *See supra* Section I.B. The exact five occasions to which Nurriddin refers are not altogether clear, but in his amended complaint and opposition, he focuses on two: (1) OWCP's decision to terminate his benefits in December 2001, after it found that he had rejected an offer for suitable work, Am. Compl. ¶ 16; and (2) OWCP's decision to suspend his benefits after he had failed to attend two scheduled medical examinations, *id.* ¶¶ 34-42; Tritz Decl. ¶¶ 18-19.

On this record,[8] it is clear Nurriddin has no colorable constitutional claim because, in both instances, he was afforded the opportunity to challenge OWCP's decision using the administrative review procedures available under FECA—reconsideration, hearing, or ECAB appeal, 20 C.F.R. § 10.600. These procedures provide adequate due process in cases where FECA benefits have been improperly terminated or suspended. *See Gallucci*, 374 F. Supp. 2d at 126 ("Unlawfully depriving a claimant of benefits does not violate due process because FECA provides for meaningful post-deprivation remedies."); *Al-Beshrawi v. Chao*, No. 5:06-cv-369, 2007 WL 1231477, at *8 (N.D. Ohio Apr. 23, 2007) ("[P]laintiff had available to him an entire menu of possible post-deprivation remedies under the extensive statutory framework of the FECA.").

---

[8] At the motion-to-dismiss stage, courts have considered the entire record when determining whether a plaintiff has brought a colorable due process claim regarding FECA benefits. *See, e.g., Hall*, 289 F. Supp. 3d at 101 (due process claim barred by FECA where "the record demonstrates that the plaintiff received ample, not just adequate, process"); *Scott v. Solis*, No. 12-cv-2055, 2014 WL 984387, at *2 (D.D.C. Mar. 14, 2014) (due process claim barred by FECA, where on the "administrative record supplied by both parties," defendant "had shown . . . that plaintiff has received meaningful hearings, has obtained a schedule award, and is receiving monetary benefits").

First, with respect to Nurriddin's alleged termination of benefits in December 2001, he has no colorable due process claim. When OWCP initially decided to terminate his benefits, it attached a summary of his appeal rights. *See* Tritz Decl., Attach. F. But before his benefits were actually terminated, after finding new evidence, OWCP reconsidered and vacated its decision. *See* Am. Compl. ¶ 23; Tritz Decl. ¶ 8. Because Nurriddin's benefits were not actually terminated, it does not appear that he was actually deprived of any property interest in this instance. But even if he had been, Nurriddin was notified of his appeal rights under FECA and has not alleged that he was denied the exercise of those rights; thus, the Court cannot find that he was deprived of an adequate post-deprivation remedy. *Cf. Ralph v. DOL*, No. 04-cv-241, 2004 WL 2051123, at *2 (D.N.H. Sept. 15, 2004) (plaintiff failed to state due process claim where he "ma[de] no allegations about the review process" by which his benefits were suspended).

Second, Nurriddin has no colorable due process claim arising from the June 2013 suspension of his benefits. In that instance, he was provided with pre-deprivation "notice and [an] opportunity to respond." *Gallucci*, 374 F. Supp. 2d at 126 (quoting *Loudermill*, 470 U.S. at 546). Nurriddin was notified that his benefits would be suspended if he did not give a valid reason for missing a scheduled medical examination. *See* Nurriddin Decl. ¶ 59, 62; Tritz Decl., Attach. N; *see also* 20 C.F.R. § 10.323(b) ("[E]ntitlement to compensation will be suspended" if the employee does not provide "good cause" for not reporting to, or otherwise obstructing, an "OWCP-directed examination."). He then submitted a response. Nurriddin Decl. ¶ 60. OWCP considered and rejected the reasons Nurriddin offered to explain his absence, but ultimately decided to reschedule the examination—which he then missed. *Id.* ¶¶ 61-64; Tritz Decl., Attach. N. Only then did OWCP suspend Nurriddin's benefits. Tritz Decl., Attach. N. In his amended

complaint and opposition brief, Nurriddin does not appear to take issue with this pre-deprivation remedy.

Instead, Nurriddin alleges that he was not afforded an adequate *post*-deprivation remedy because his subsequent requests for reconsideration, hearing, and ECAB appeal were denied. Am. Compl. ¶¶ 40-42; Pl.'s Opp. at 4-5. But Nurriddin's amended complaint and opposition brief identify only one such request: in a letter dated August 26, 2013, he petitioned the Secretary of Labor's office to review OWCP's suspension of his benefits or, in the alternative, afford him an "expedited ECAB Appeal." Pl.'s Opp. at 1 (quoting ECF No. 21-1, Attach. 28); Am. Compl. ¶ 36. However, this request could not have been improperly denied, because the request itself was not properly made. First, there is no procedure available under FECA for an employee to make a request for reconsideration directly to the Secretary of Labor. *See* 20 C.F.R. § 10.600.[9] Second, Nurriddin failed to properly request an expedited ECAB appeal. When OWCP suspended his benefits, it provided clear instructions on how Nurriddin could exercise his appeal rights. *See* Tritz Decl., Attach. N. To request an expedited ECAB appeal, he needed to mail a signed "Appeal Request Form" and a completed "AB1 form" to ECAB, *see id.*—which Nurriddin's August 2016 letter did not accomplish, *see* ECF No. 21-1, Attach. 28. Thus, he has not demonstrated that DOL improperly denied a request for further administrative review.

Although not mentioned in Nurriddin's complaint and opposition brief, it appears that he sent two additional letters to the Secretary of Labor regarding the June 2013 suspension of his

---

[9] Nurriddin's letter also does not properly request reconsideration by OWCP. Requests for reconsideration by the OWCP district office must be directed to that office, not the Secretary of Labor. *See* 20 C.F.R. §§ 10.600, 10.605. And while an OWCP decision may be *sua sponte* reviewed directly by OWCP's Director, such review cannot be requested. *Id.* § 10.610 ("A review on the Director's own motion is not subject to a request or petition and none shall be entertained.").

benefits. However, neither letter changes this Court's conclusion, because neither demonstrates that Nurriddin properly requested (and was denied) reconsideration, a hearing, or an ECAB appeal. In the first letter, dated September 13, 2013, Nurriddin requested that the Secretary of Labor clarify "the possibility of[] pre-ECAB, administrative review." ECF No. 21-1, Attach. 29. However, asking about the "possibility" of further administrative review is not the same as requesting that such review take place. *Cf. Prestop v. Hamlett*, No. 99-cv-2747, 2001 WL 363676, at *8 (S.D.N.Y. Apr. 12, 2001) (finding no cognizable due process violation where plaintiff's letters to DOL did not "mention that she wish[ed] to appeal OWCP's decision to reduce her [FECA] benefits"). In the second letter, dated October 24, 2013, Nurriddin requested that the Secretary of Labor's office "review the failures of the Washington District Office [of OWCP]." ECF No. 21-1, Attach. 30. But as already discussed above, employees may not request review of an OWCP decision by the Secretary of Labor directly.

Accordingly, on this record, Nurriddin has not alleged colorable due process claims against DOL that would allow him to challenge DOL's compensation decisions under FECA in this Court.

### b.  Equal Protection Claims

Nurriddin does not explicitly plead an equal protection violation in his amended complaint, but he asserts that he has alleged one in his opposition. Pl.'s Opp. at 4. However, "[a] viable equal protection claim . . . must allege that similarly situated persons were intentionally treated differently and the facts pled must be specific." *Ramirez*, 199 F. App'x at 307. Here, Nurriddin has alleged no specific facts that he has been treated differently than other similarly situated FECA claimants. Accordingly, Nurriddin has not brought a viable equal protection claim. *See Munn v. DOL*, No. 1:16-cv-151, 2017 WL 627433, at *4 (S.D. Miss. Feb.

15, 2017) (holding that passing references to an equal protection claim in a complaint did not constitute a "substantive constitutional challenge sufficient to overcome FECA's preclusion of review" (internal quotation mark omitted)), *aff'd*, 714 F. App'x 387 (5th Cir. 2018). Because Nurriddin has not alleged colorable equal protection claims against DOL, FECA precludes those claims as well.

### 3. APA Claims

"The APA . . . does not provide an independent jurisdictional basis; it only prescribes the standards for reviewing agency action once jurisdiction is otherwise established." *Staacke v. U.S. Sec'y of Labor*, 841 F.2d 278, 282 (9th Cir. 1988) (citing *Califano v. Sanders*, 430 U.S. 99, 105, 106-07 & n.6 (1977)). Thus, because the Court does not otherwise have jurisdiction, the APA does not permit this Court to review any of Nurriddin's purported claims against DOL. *See id.* (holding that the APA does not provide an independent grant of subject matter jurisdiction to review a FECA claim); *Gallucci*, 374 F. Supp. 2d at 128 (same); *Wacks v. Reich*, 950 F. Supp. 454, 458 (D. Conn. 1996) (same).

### B. Claim against OPM

In his amended complaint, Nurriddin alleges that OPM "failed to take appropriate action to ensure that NASA properly return[ed] him to work." Am. Compl. ¶ 26. He asserts that OPM was required to take such action under FECA, which provides certain work-restoration rights to injured federal employees. *See id.* at 1 (citing 5 U.S.C. § 8151).[10] But under OPM regulations, the sole manner in which alleged violations of these rights may be directly challenged is by

---

[10] Nurriddin's amended complaint also references "5 U.S.C. § 353," Am. Compl. at 1, but this statutory provision does not exist. The Court assumes that Nurriddin intended to cite 5 C.F.R. § 353—a part of the code of federal regulations concerning work-restoration rights.

appealing to the MSPB. 5 C.F.R. § 353.304. And because Nurridin's claim is within the MSPB's jurisdiction, the Civil Service Reform Act of 1978, 5 U.S.C. §1101, *et seq.* ("CSRA") bars judicial review of it.[11]

The CSRA "established a comprehensive system for reviewing personnel action taken against federal employees." *United States v. Fausto*, 484 U.S. 439, 455 (1988). It provides "an integrated scheme of administrative and judicial review, designed to balance the legitimate interests of the various categories of federal employees with the needs of sound and efficient administration." *Id.* at 445. "Through the CSRA, federal employees are permitted to challenge adverse personnel actions related to these subjects before the MSPB, and to appeal decisions from that body to the Federal Circuit." *Gallo v. United States*, 76 Fed. Cl. 593, 600 (2007), *aff'd*, 529 F.3d 1345 (Fed. Cir. 2008). The exclusive delegation of CSRA jurisdiction to those bodies is intended to foster the development "of a unitary and consistent Executive Branch position on matters involving personnel action"; to "avoid[] an unnecessary layer of judicial review in lower federal courts"; and to "encourage[] more consistent judicial decisions." *Id.* (alterations in original) (quoting *Fausto*, 484 U.S. at 449).

The CSRA bars any judicial review of adverse personnel actions by federal employees that are subject to its exclusive review mechanism. Although this limitation is not explicit in the text of CSRA, the Supreme Court has held that it is "fairly discernible" from the statute's text and structure. *Elgin v. Dep't of Treasury*, 567 U.S. 1, 11 (2012) (quoting *Fausto*, 484 U.S. at

_____

[11] Nurridin's claim against OPM, although based on a FECA requirement set forth in 5 U.S.C. § 8151(b), is not judicially barred by FECA itself because it does not involve an "action of the [DOL] Secretary or his designee in allowing or denying a payment . . . ." 5 U.S.C. § 8128(b); *see Duch v. Potter*, No. 06-12511, 2007 WL 2261400, at *3 (E.D. Mich. Aug. 6, 2007) (holding that judicial review of claim under § 8151(b) was not barred because § 8128(b) only "prevents judicial review of compensation decisions").

452).  And, "[j]ust as the CSRA's 'elaborate' framework demonstrates Congress' intent to entirely foreclose judicial review to employees to whom the CSRA denies statutory review, it similarly indicates that extrastatutory review is not available to those employees to whom the CSRA *grants* administrative and judicial review."  *Id.* (citation omitted) (quoting *Fausto*, 484 U.S. at 443).

"The CSRA, by its terms, however, does not encompass every adverse personnel action against a federal employee."  *Worthington v. United States*, 168 F.3d 24, 26 (Fed. Cir. 1999).  "To determine the coverage of the CSRA, [the] court assesses the jurisdiction of the [MSPB]."  *Id.*

Here, it is clear that the personnel action challenged by Nurriddin—OPM's alleged failure to properly return him to work, Am. Compl. ¶ 26—falls within the MSPB's jurisdiction.  FECA requires that federal employers "allow injured employees to return to their old positions or, if they can no longer perform their original duties, to offer them reasonable alternative positions."  *Meester v. Runyon*, 149 F.3d 855, 856 (8th Cir. 1998) (citing 5 U.S.C. § 8151(b); 20 C.F.R. § 10.123(d)).  It explicitly states that this requirement is governed by regulations issued by OPM.  5 U.S.C. § 8151(b).  Those regulations provide that "an injured employee or former employee of an agency in the executive branch . . . may appeal to the MSPB an agency's failure to restore, improper restoration, or failure to return an employee following a leave of absence."  5 C.F.R. § 353.304(a).  MSPB's jurisdiction over such appeals is further confirmed elsewhere in the regulations.  *See id.* § 1201.3(a)(4) (providing MSPB jurisdiction over appeals involving "[f]ailure to restore, improper restoration of, or failure to return following a leave of absence following recovery from a compensable injury" (citing 5 C.F.R. § 353.304)); *see also* 5 U.S.C.

§ 7701(a) (permitting employees to appeal "any action which is appealable to the [MSPB] under any law, rule, or regulation" to the MSPB).

Because Nurriddin's claim falls within MSPB's jurisdiction, it is covered by the CSRA. *Cf. Gallo*, 76 Fed. Cl. at 606 (concluding a claim for violation of 5 U.S.C. § 8151(a), within FECA, was within the scope of the CSRA). And, because the CSRA applies, it precludes Nurriddin's entire challenge to OPM's decision, including any purported constitutional aspects of that challenge. "Congress intended covered employees appealing covered agency actions to proceed exclusively through the statutory review scheme, even in cases in which the employees raise constitutional challenges. . . ." *Elgin*, 567 U.S. at 10. "[C]onstitutional claims can receive meaningful review within the CSRA structure." *Id.* at 21.

Finally, as discussed, the APA does not provide an independent grant of subject matter jurisdiction. *See supra* Section III.A.3; *see also Califano*, 430 U.S. at 105-07 & n.6. Therefore, it alone does not permit this Court to review Nurriddin's claim against OPM.

For all of the above reasons, the Court must dismiss Nurriddin's amended complaint for lack of subject matter jurisdiction.

*     *     *

Nurriddin has also filed a motion for preliminary injunctive relief. ECF No. 27. But "[h]aving concluded that the action should be dismissed, the Court need not address whether [Nurriddin] has satisfied the four-factor test for issuance of a preliminary injunction." *Justice v. Koskinen*, 109 F. Supp. 3d 142, 151 (D.D.C. 2015) (citing *Winter v. Nat'l Res. Defense Council, Inc.*, 555 U.S. 7, 20 (2008)), *aff'd*, 672 F. App'x 6 (D.C. Cir. 2016). "The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held." *Univ. of Tex. v. Camenisch*, 451 U.S. 390, 395 (1981). "In the absence of a

pending claim for relief, there is no basis for the Court to issue an order designed to maintain the status quo while the merits of the dispute are resolved." *Koskinen*, 109 F. Supp. 3d at 151; *see also Venezia v. Robinson*, 16 F.3d 209, 211 (7th Cir. 1994) ("A preliminary injunction cannot survive the dismissal of a complaint.").

Accordingly, Nurriddin's motion for a preliminary injunction must be denied as moot. *See, e.g.*, *United to Protect Democracy v. Presidential Advisory Comm'n on Election Integrity*, 288 F. Supp. 3d 99, 101 (D.D.C. 2017) (granting motion to dismiss and denying motion for a preliminary injunction as moot); *Am. Freedom Law Ctr. v. Obama*, 106 F. Supp. 3d 104, 106 (D.D.C. 2015) (same), *aff'd*, 821 F.3d 44 (D.C. Cir. 2016); *Appalachian Voices v. Bodman*, 587 F. Supp. 2d 79, 83 (D.D.C. 2008) (same). In support of his preliminary injunction motion, Nurriddin has moved to file a supporting exhibit under seal. ECF No. 35. Since the former motion will be denied as moot, the latter motion will be as well.

## IV. Conclusion

For the foregoing reasons, Defendants' motion to dismiss (ECF No. 13) will be granted, and Nurriddin's motion for preliminary injunctive relief (ECF No. 27) and motion to file a supporting exhibit under seal (ECF No. 35) will be denied as moot. This action will be dismissed for lack of subject matter jurisdiction, in a separate order.

/s/ Timothy J. Kelly
TIMOTHY J. KELLY
United States District Judge

Date: August 30, 2018